IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>C&J WELL SERVICES, INC.,<br><br>Defendant. | Case No. 1:19-cr-079<br><br>**JOINT FACTUAL STATEMENT**<br><br>Offense: Willful OSHA Violation Causing Death, 29 U.S.C. § 666(e) |

## JOINT FACTUAL STATEMENT

The following Joint Factual Statement is incorporated by reference as part of the Plea Agreement ("Agreement") between the United States of America and Defendant C&J WELL SERVICES, INC. ("CJWS"), a Delaware corporation, formerly known as Nabors Completion and Production Services, Co. ("NCPS"). The Defendant hereby agrees and stipulates that, to Defendant's knowledge and belief, this Joint Factual Statement is true and accurate in all material respects and provides a sufficient factual basis for the guilty plea in the above captioned case. The Defendant agrees that the acts and omissions forming the criminal violation described herein were committed by employees of NCPS. The Defendant agrees that, had this matter proceeded to trial, the United States would have proven the charge set forth in the accompanying Criminal Information and the facts contained in this Joint Factual Statement beyond a reasonable doubt. This Joint Factual Statement does not contain all of the facts known to the United States or the Defendant.

1

Prior to March 24, 2015, and during the timeframe that is the subject of this Joint Factual Statement, NCPS was wholly-owned by Nabors Industries Ltd. ("Nabors"). On or about the March 24, 2015 date, NCPS separated from Nabors and was later renamed CJWS. CJWS continues to exist and operate as a Delaware corporation headquartered in Houston, Texas.

The Defendant acknowledges that it is liable for the criminal conduct of NCPS described in this Joint Factual Statement. The Defendant acknowledges that on October 3, 2014, NCPS willfully violated a federal safety standard that caused the death of employee Dustin Payne.

**Overview of NCPS Operations in North Dakota**

1. At all times relevant to this matter, NCPS was a well completion and production services company that employed several thousand workers nationally with operations in the major domestic oil and gas fields. NCPS was incorporated in Delaware and headquartered in Houston, Texas. The well "completion" services provided by NCPS to well operators included hydraulic fracturing (fracking) and well cementing services. The well "production" services included "workover" jobs designed to improve the performance of existing wells and "fluids management" services, which primarily consisted of hauling waste fluids from wells to injection wells for underground disposal.

2. NCPS operated a facility in Williston, North Dakota, at which it operated the business lines described above. The facility employed approximately 45 workers in a maintenance department to maintain and repair NCPS equipment.

3. The victim, Dustin Payne, was one of three welders employed by the maintenance department and assigned to work in a mechanics bay that NCPS had designated as the "welding bay." The duties of Payne and the other welders included the fabrication of equipment, such as joining pieces of metal to make equipment stands, and the repair of NCPS equipment.

### NCPS's Written Policy for Complying with the Fire Prevention Standard

4. NCPS had a written policy governing welding safety (hereinafter the "welding policy"), the purpose of which was to ensure compliance with OSH Act welding standards, including the fire prevention standard set forth at Title 29, Code of Federal Regulations, Subpart 1910.252(a).

5. The NCPS welding policy contained most of the requirements of the OSH Act fire prevention standard. The policy (1) directed managers to evaluate potential fire and explosion hazards in the workplace and to make sure that all employees were aware of welding policies and procedures; (2) required that all welders, their supervisors, and individuals responsible for authorizing welding work receive job-specific welding training; (3) required that managers designate a local manager to perform pre-work inspections and issue hot work permits, and to take and record gas readings with a meter prior to welding; and (4) required that district managers review local compliance with the welding policy twice a year, and submit the results of the review to the NCPS health and safety director in Houston. The policy also prohibited welding "[i]n the presence of explosive atmospheres (mixtures of flammable gases, vapors, liquids or dusts with air), or explosive atmospheres that may develop inside uncleaned or improperly prepared

3

tanks or equipment which have previously contained such materials . . .", as required by Title 29, Code of Federal Regulations, Subpart 1910.252(a)(3)(i).

### Training

6. Payne, the last of the three welders hired by NCPS for the Williston facility, started working in late July 2014. None of the three welders had substantial prior professional welding experience or substantial prior oilfield experience.

7. NCPS did not provide the welders with welding-specific training. Instead, the welders received the same three-day, 25-subject "awareness" training that NCPS provided to all new hires regardless of job duties. The awareness training was expressly intended to identify oilfield hazards and was to be used in conjunction with company- and job-specific supplemental training. The awareness training did not instruct new hires on the specific requirements of the OSH Act or company policies, including the regulations related to tank welding.

8. NCPS policy required that all new hires be provided with a safety handbook containing instructions for the safe completion of various oilfield tasks. The handbook instructed that welding on tanks "shall never be done until the vessel has been completely cleaned and checked for residual explosive gases." NCPS did not provide the handbook to Payne or the other welders.

9. NCPS's written welding policy was not provided to the welders.

4

### Supervision

10. NCPS management failed to perform the risk assessment and job planning responsibilities required under the OSH Act. NCPS management failed to designate a responsible individual to perform pre-work inspections and authorize welding jobs for work done by the welders, as its welding policy required. The NCPS maintenance department did not have a gas meter that could be used to test for explosive vapors prior to welding. No hot work permits were issued for any of the approximately 200 welding projects performed by the welders in or around the welding bay.

11. Also, the NCPS maintenance manager failed to adequately supervise the daily work of the welders.

### Compliance Monitoring

12. NCPS's Health, Safety, and Environmental (HSE) department, which was also responsible for responding to injuries, environmental incidents, inspections by state, local, and federal agencies, injury claims management, and internal investigations of losses and compliance failures, failed to monitor compliance with OSH Act standards and company policy. NCPS's welding policy required that HSE professionals complete a semiannual review of welding-related incidents, employee complaints, the number of hot work permits issued, and the adequacy of welding training. Such semiannual reviews were to be completed in January and July of each year to reflect the welding compliance history of the six preceding months. At the time of the explosion that caused the death of Payne in October 2014, the HSE department had not started the process of reviewing Williston's welding compliance for the first half of 2014.

### Leaking Tankers

13. NCPS's Williston facility contracted with oil well operators in the Bakken to haul "produced water" or "salt water" from oil wells to underground injection wells by trucks with attached tanker trailers called "water haulers." The tankers were lined with a protective coating to prevent corrosion by the highly saline produced water. However, a number of the trailers in Williston were experiencing liner failures and had begun to leak out of small holes, especially when placed under positive pressure during the offloading process. Leaking tanker trailers were a problem for NCPS's water hauling department because produced water spills were prohibited by North Dakota state environmental law and by NCPS customers.

14. However, beginning in August 2014, NCPS had a strong business need to ensure that as many tanker trailers as possible were kept on the road hauling produced water to meet the demands of a new contract. Beginning in September 2014, the welders repeatedly repaired the tanks by welding aluminum patches over tank holes, or by filling in the holes using aluminum wire-fed welding equipment. Either approach involved welding on used tanks. None of these repairs complied with the OSH Act fire prevention standard. Specifically, none of the tankers were cleaned to remove hydrocarbon residue prior to welding, no pre-work inspections with gas detectors took place, and no hot work permits were issued. To perform the repairs in compliance with the law required a steam cleaning of the tank interiors, which did not occur.

15. NCPS was aware that produced water—which NCPS's production services business line was in the business of transporting—contained hydrocarbons.

6

Nevertheless, NCPS failed to warn the welders about the dangers inherent in welding on tankers that previously contained produced water.

### The Fatal Explosion

16. On October 3, 2014, a leaking tanker trailer was brought to the welding bay for repair. The trailer was backed into the welding bay so that Payne could access the small hole located at the rear of the trailer. The tanker was neither clean nor vented. When Payne struck his welding torch to the side of the tanker, hydrocarbon vapors inside the tanker ignited and the closed tanker exploded, fatally injuring Payne, who died on October 8, 2014.

DREW H. WRIGLEY
United States Attorney for the
 District of North Dakota

Dated: 5/29/2019

By: GARY L. DELORME
Assistant United States Attorney

Dated: 5/29/19

By: SAMUEL CHARLES LORD
Trial Attorney

CHRISTOPHER J. COSTANTINI
Senior Trial Attorney

Dated: 5/23/19

DANIELLE HUNTER, Representative for
C&J WELL SERVICES, INC., Defendant

Dated: 5/28/19

NADIRA CLARKE
Attorney for Defendant

8